UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

United States of America

v.   No: 1:14-cr-93-LM

Alkis Nakos

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALKIS NAKOS'S MOTION TO SUPPRESS RE: MOTOR VEHICLE STOP

#### Introduction

To decide this Motion to Suppress, the Court need consider one issue:

**Unjustified detention after traffic stop.** Nakos was stopped for a minor traffic infraction. Upon learning that his passenger had a non-extraditable warrant from Florida, Trooper Czyzowski detained Nakos and his passenger, questioned them further, and pat frisked them. Nakos and his passenger each had a lot of cash on them. They gave consistent statements about going to Foxwoods. But Trooper Czyzowski summoned a K-9 unit to the scene to sniff the car for drugs. Given the lack of reasonable suspicion that Nakos was involved in drug activity did Trooper Czyzowski detain Nakos longer than necessary for the traffic stop?

#### Facts[1]

Alkis Nakos ("Nakos") is charged with a continuing criminal enterprise (Count I) and conspiracy to distribute and possess with intent to distribute marijuana and MDMA (Count II).

---

[1] These facts are taken from the discovery materials and Nakos's detention hearing.

On March 17, 2014, at approximately 1830 hours, Trooper Czyzowski stopped Nakos's car for following another vehicle at an unsafe distance, southerly, on the Everett Turnpike in Nashua. Trooper Czyzowski estimated that Nakos was driving 55-60 m.p.h.

Nakos's passenger was Christopher Ranfos ("Ranfos"). When Trooper Czyzowski approached the car, Ranfos had his ID out. Nakos gave Trooper Czyzowski the documentation he requested. Trooper Czyzowski returned to his cruiser where he contacted dispatch and confirmed Nakos owned the car. He also learned that Ranfos had a non-extraditable warrant from Florida for "dangerous drugs – sale or delivery of marijuana." Then, Trooper Czyzowski went back Nakos's car and asked to speak with Ranfos outside the car.

Trooper Czyzowski saw bulges in Ranfos's front pockets, and performed a pat frisk. Trooper Czyzowski recognized the bulge in Ranfos's right front pocket as a wad of cash, and asked Ranfos about how much money he had. Ranfos told him "a few thousand…2-3." At Trooper Czywoski's request, Ranfos removed the cash, and put it back in his pocket. Trooper Czyzowski saw a stack of $100 bills, folded in half with an elastic, and some $20 bills. He asked Ranfos what he did for work. Ranfos said, HVAC. Trooper Czyzowski did not recognize the company's name.

Trooper Czyzowski then continued a pat down frisk and noted a similar wad in Ranfos's left front pocket. He asked Ranfos how much he had. Ranfos told him "a few thousand…2-3." Ranfos declined to show Trooper Czyzowski the contents of his left front pocket. When asked why he had so much cash, Ranfos said he was going to Foxwoods. In response to more questioning, Ranfos said he planned to stay overnight

and had a backpack with him. Trooper Czyzowski saw a backpack on the floor next to the Ranfos's seat.

Trooper Czyzowski asked Ranfos about Florida warrant. Ranfos said it was for a "1/4 pound of weed, a long time ago." Ranfos gave Trooper Czyzowski consent to search his backpack.

Then, Trooper Czyzowski went back to the car and asked to speak with Nakos outside of the car. After some discussion, Nakos agreed to get out and went to the rear of the car. When he did, Trooper Czyzowski saw "similar bulges" in Nakos's front pockets as he had seen on Ranfos. Trooper Czyzowski performed a pat frisk and recognized "wads of cash in both front pockets." He asked Nakos how much money he had. Nakos said a few thousand. Trooper Czyzowski asked what Nakos did for work. Nakos said his father owned Amory House of Pizza.

Trooper Czyzowski noted that Nakos lived on Pine Street. Trooper Czyzowski believed Pine Street was a "high drug activity area" and thought it was "very unusual for a resident of Pine Street (low income area) to drive a brand new Mercedes and have thousands of dollars with them."

Asked why he had so much cash on him, Nakos said he was going to Foxwoods. Trooper Czyzowski asked Nakos if he was planning to stay overnight. Nakos said he was. No bags other than Ranfos's were visible in the car, so Trooper Czyzowski asked Nakos if he had any luggage. Nakos said he did, in the trunk. Nakos declined to show Trooper Czyzowski the luggage. Trooper Czyzowski asked Nakos if he knew about Ranfos's Florida warrant. Nakos said he did not. Trooper Czyzowski asked Nakos if he had ever abused drugs. Nakos said he had, and had served 7 years in state prison for

3

selling crack. Nakos said he nothing in his car. Nakos declined to allow Trooper Czyzowski to search the car. In response, Trooper Czyzowski said he would request a K-9 unit to walk around the car. Nakos had no reaction.

Trooper Czyzowski contacted Trooper Richards and Trooper Ingham. They responded from Manchester. Trooper Richards arrived first. Trooper Ingham brought a K-9 unit.

When Trooper Ingham arrived, his K-9 unit walked around Nakos's car, then jumped into the car through the open window. The K-9 investigation lasted approximately 20 minutes. Trooper Ingham told Trooper Czyzowski that there was positive alert for the presence of drugs. In response, Trooper Czyzowski told Nakos the car would be taken away and secured pending application for a search warrant. To Trooper Czyzowski, Nakos appeared unphased.

Nakos refused to give Trooper Czyzowski his car keys. Nakos and Ranfos were told they could leave. After being told they could not retrieve their cell phones, they walked away, heading up the off ramp toward the Nashua Mall. Trooper Czyzowski asked Troopers Richards and Ingham to give Nakos and Ranfos back their licenses. They did, and Nakos and Ranfos continued on their way. Later, Trooper Czyzowski asked Troopers Richards and Ingham to seize the money Nakos and Ranfos had on them. The troopers located Nakos and Ranfos, who surrendered their money. $6,471 was seized from Nakos. $9,451 was seized from Ranfos.

Trooper Czyzowski applied for a search warrant, which was issued. The following items were seized from the car: $895 from Nakos's wallet; $700 from Nakos's wallet; 1,065 in Euros from Nakos's wallet; $17.80 in Canadian currency from Nakos's

4

wallet; 13 bank documents (deposit slips, money bands, etc); 3 iPhones; 1 Samsung phone; $100 from Ranfos's wallet; and a zig-zag package of marijuana in the front pocket of a backpack in the trunk.

Nakos was charged with transporting drugs. It does not appear Nakos was issued a traffic citation.

## Argument

**1. Trooper Czyzowski lacked reasonable suspicion to detain Nakos longer than necessary for the minor traffic violation.**

When Trooper Czyzowski detained Nakos so that he could question and frisk Ranfos, then question and frisk Nakos, Trooper Czyzowski conducted an unlawful seizure. As a result, the search of Ranfos's person, Nakos's person, the K-9 investigation, the seizure of money from Nakos, and the subsequent search of Nakos's car were illegal. The evidence obtained from these searches must be suppressed.

A traffic stop is governed by *Terry v. Ohio*.[2] It must be:(1) justified at its inception, and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."[3] "A reasonable traffic stop can become unreasonable under the Fourth Amendment if the time, manner or scope of the investigation exceeds the proper parameters."[4]

 "An officer's inquiries into matters unrelated to the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."[5] But if an officer's investigation extends the

---

[2] *United States v. Childs*, 256 F. 3d 559, 563-64 (7th Cir. 2001).
[3] *United States v. Mouscardy*, 722 F.3d 68, 73 (1st Cir. 2013).
[4] *Childs*, 256 F. 3d at 564.
[5] *United States v. Fernandez*, 600 F.3d 56, 60 (1st Cir. 2010) (citations omitted).

duration of the stop, he must have "reasonable suspicion" of criminal activity.[6] A court looks at the "totality of the circumstances" to determine whether the officer had a particularized, objective basis for his suspicion.[7]

There were two detentions, here. The first was after Trooper Czyzowski had contacted dispatch and confirmed Nakos owned the car. The second was after Trooper Czyzowski had questioned Nakos and ordered the K-9 unit to the scene.

**A.  Detention After Calling Dispatch.**

There was no reason to detain Nakos after Trooper Czyzowski had contacted dispatch, so that Ranfos could be questioned and pat-frisked outside of the car.

Trooper Czyzowski observed no conduct that formed a basis for a reasonable suspicion to detain Nakos for longer than issuing a simple traffic citation. Ranfos's "unusual" offering of his ID is akin to nervousness, a response, in itself, that did not establish reasonable suspicion.[8]

Moreover, there were no other facts that gave rise to reasonable suspicion. Trooper Czyzowski did not claim that Nakos or Ranfos made any furtive gestures. He did not claim that they acted aggressively. He did not see any weapons. He did not believe they were impaired. He did not smell or see any drugs. And Trooper Czyzowski did not claim any prior knowledge of Nakos or Ranfos, or of any ongoing investigations regarding them.

---

[6] *United States v. Jones*, 700 F.3d 615, 621 (1st Cir. 2012).
[7] *Id.*
[8] *United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005).

In addition, Ranfos's non-extraditable warrant from Florida did not give rise to reasonable suspicion because Ranfos could not have been arrested on the warrant.[9]

In sum, Trooper Czyzowski received no information from dispatch that would have reasonably led him to believe Nakos was involved in any criminal activity, and permitted him to extend the duration of the traffic stop. After contacting dispatch, Trooper Czyzowski should have given Nakos a warning or a citation and ended the interaction.

**B.      Detention After Questioning Nakos.**

Trooper Czyzowski's further interactions with Ranfos and Nakos did not amount to reasonable suspicion that justified detaining Nakos until the K-9 unit could be summoned and the dog could sniff the car.

From his "post-dispatch" interactions, Trooper Czyzowski gleaned the following: Ranfos and Nakos each had wad of cash in their front pockets; each said they were headed to Foxwoods for the night; and Nakos had a criminal record for selling crack. I will address each in turn.

First, the wads of cash were not connected to any criminal activity Trooper Czyzowski was aware of.[10] A wad of cash may form the basis for reasonable suspicion when the officer has received facts that connect the money to illegal activity. A wad of cash found on a robbery suspect,[11] say, or someone who has received money in a

---

[9] In fact, Trooper Czyzowski did not arrest Ranfos at the time. Moreover, the warrant would not have justified a search of Ranfos or the vehicle. *Cf. United States v. Echevarria-Rios*, 746 F.3d 39, 41 (1st Cir. 2014) (good faith exception applied when officers relied on facially valid warrant when evidence seized).
[10] The knowledge of law enforcement agents who were investigating Nakos at the time cannot be imputed to Trooper Czyzowski because he neither acting with them or at their direction. *See U.S. v. An*, 564 F.3d 25, 31 (1st Cir. 2009).
[11] *United States v. Martinez*, 462 F.3d 903, 906-908 (8th Cir. 2006).

7

controlled buy would provide reasonable suspicion.[12] Here, Trooper Czyzowski knew only that Ranfos said they'd been in Manchester. Notably, Trooper Czyzowski asked no follow up questions of Ranfos or Nakos about where they'd been in Manchester or what they'd been doing and with whom. He did not ask where they got the cash – only what they did for work. As a result, he had no facts to discredit their explanations. Trooper Czyzowski could not reasonably conclude that there were coming from a recent drug transaction or that the funds were otherwise illegally obtained.

Next, questioned separately, Ranfos and Nakos were consistent in their answers about their plans to go to Foxwoods for the night.

Third, Nakos's prior criminal record could not have supplied reasonable suspicion.[13] In fact, Nakos's truthful response about his record negated reasonable suspicion.[14]

The Court of Appeals for the First Circuit's decision in *United States v. Chhien* is helpful to the analysis of this case.[15] There, a trooper stopped the defendant's car for two violations: tinted windows and travelling too close to the car ahead.[16] The trooper got the defendant (who was driving) out of the car and conducted a pat frisk, during which the trooper felt a lump in the defendant's front pants pocket.[17] Asked what it was, the defendant said it was a large wad of cash.[18]

---

[12] *United States v. Cervantes*, 19 F.3d 1151, 1153 (7th Cir. 1994).
[13] *United States v. Wood*, 106 F.3d 942, 946-48 (10th Cir. 1997) (prior record does not automatically give rise to reasonable suspicion).
[14] *See United States v. Riley*, 684 F.3d 758, 763 (8th Cir. 2012) (officer's suspicions aroused by defendant lying about his criminal record).
[15] 266 F.3d 1 (1st Cir. 2001).
[16] *Id.* at 3-4.
[17] *Id.* at 4.
[18] *Id.*

8

Growing suspicious, the trooper asked the defendant where he was going and where he was coming from.[19] Then, the trooper questioned the passenger, who gave slightly different story.[20] Discrepancies increased with more questioning.[21] When assistance arrived, the trooper saw the passenger's head sink from view and bob up again; asked what it was, she produced a plastic bag of crack cocaine.[22]

The Court concluded that the wad of cash justified the trooper's decision to continue the detention briefly so that he could question the defendant and his passenger about their itinerary.[23] His suspicions increased when the defendant and passenger gave inconsistent explanations, and the passenger made furtive movements.

Here, the sequence was very different. After contacting dispatch, Trooper Czyzowski had no further reason to detain Nakos for the traffic stop. Because he had no basis to arrest or investigate Ranfos, he had no reason to detain Nakos, so he could investigate Ranfos.[24] Unlike *Chhien*, Trooper Czyzowski decided to question Ranfos – and Nakos – <u>before</u> he had seen the wad of cash on Ranfos. (emphasis added). And, unlike *Chhien*, Trooper Czyzowski's conversation with Nakos and Ranfos had revealed no discrepancies.

Lastly, Trooper Czyzowski's suspicions about a nice car from a bad neighborhood, at best, amounted to nothing more than speculation.

---

[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*.
[23] *Id*. at 9-10.
[24] *See United States v. Henderson*, 463 F.3d 27, 46-47 (1st Cir. 2006).

**Conclusion**

Trooper Czyzowski had no basis to detain Nakos after confirming with dispatch that Nakos owned the car. The subsequent detention during which Trooper Czyzowski asked Ranfos to exist the car, pat frisked him and questioned him, impermissibly prolonged the traffic stop. In addition, Trooper Czyzowski's detention of Nakos after he pat frisked and questioned Nakos impermissibly prolonged the traffic stop. Accordingly, the evidence obtained from the K-9's sniff of the car and subsequent search warrant must be suppressed.

ALKIS NAKOS

By his Attorney,

Dated: January 7, 2015     /s/ Robert S. Carey_____
Robert S. Carey, NH Bar #11815
ORR & RENO, P.A.
45 S. Main Street
P.O. Box 3550
Concord, NH 03302
(603) 224-2381

CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2015, a copy of the within Motion was Electronically Served upon all counsel of record and Conventionally upon Alkis Nakos.

/s/ Robert S. Carey_____
Robert S. Carey, NH Bar #11815

1244607\_1